For the benefit of the audience, this case has many of the same issues you just had discussed, but this case has a little different twist to it. So we'll try to figure it out, too. Mr. Carpenter, former law clerk to Judge Michael in West Virginia. May it please the Court. Ms. Ray, former clerk to Judge Hamilton, I believe. Okay, let's hear from you, Mr. Carpenter. May it please the Court. Judge Traxler, as you mentioned, there are a few issues that are specific to our case. But unless the Court objects, I would start with the hood issue the Court has just been discussing, which is the antecedent issue in this case. I think the key point to make here, the amicus that the Court appointed Mr. Adams and Mr. Schmalz, who wrote a great brief, gave a good argument. I think the most telling thing about their brief and their argument is an omission, which is that they were not able to find and cite a single other circuit or a single other district court in this country that continues to follow hood in light of the intervening decisions in Dillon and Freeman and the Sentencing Commission's Amendment 1B1.10. If the Court affirms hood, it will be a complete outlier, and I'll go ahead and ask the Court that they should take it in bank if they think that it continues to control. It is superseded both by Dillon and by Freeman. I'll start with Dillon. What hood says is that 3582 works in two pieces. It has the baseline requirement and it has the requirement that the reduction be consistent with the Sentencing Commission's policy statements in 1B1.10. But if you look at Dillon, it gives Section 3582 a different interpretation. What it says at page 2691, it interprets the statute as essentially delegating to the Sentencing Commission the determination in the first instance of which category of defendants are eligible for retroactive relief. So it says 3582C2 requires the Court to follow the Commission's instructions in 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. In other words, according to Dillon, 3582C2 is a delegation. If the Sentencing Commission says this category of defendants is eligible, they are eligible. And the Courts are to follow that instruction. And I think there's no doubt that the Sentencing Commission, through the recent amendments to 1B1.10, has made clear its belief that the category of defendants into which Mr. Hardy and Mr. Williams, in the previous case, fall, it should be eligible for retroactive relief. In my view, under Dillon, the Courts are required to follow that decision by the Sentencing Commission. So is there some indication that the District Court here thought that it did not have the ability to reduce the sentence based on 3582? If you're speaking of Mr. Hardy's case, the District Judge here certainly agreed that he had the discretion to reduce the sentence. Right. And so isn't the key word discretion? And the District Court believed it had that authority and exercised its discretion. So how do you get around that? Right. So that moves us to the particular issue in our case, which is whether the Court misunderstood the scope of his discretion. So we believe that, as Dillon says, it's a two-part process. Step one, the District Judge has to recognize what is the scope of my discretion. In this case, as the government agreed, even in the District Court and still here, the scope of the discretion was to go down to a 98-month sentence. So our belief is that at step one, the Judge had to recognize that he had the ability to go that far and then to ground, because he has the discretion, but that discretion is not absolute, it's not unbounded. It's instead rooted in the 3553A factors, and that's expressly mentioned in 1B1.10, which says once they're eligible, you exercise your discretion in accordance with 1B1.10. So our view is that because the District Court neither recognized that he could go to a sentence of 98 months, he did not say, I intend to exercise my discretion to limit the scope of a reduction here, and he did not point to any of the 3553A factors that would have justified an exercise of his discretion. I think Ms. Ray, in her response brief, cites the 3553A factors at page 15, but I think it's telling that the District Court didn't cite any of those factors in its order. It was relying instead on what appeared to be a mathematical calculation of what is comparable or what is not comparable, and that's a decision that under Dillon is entrusted to the Sentencing Commission to make in the first instance. What is the scope of a comparable reduction which the District Court is authorized to grant? And then once the District Court recognizes the full extent of its authority, it may exercise its discretion if it feels that the 3553A factors compel it to grant only a lesser reduction. Here, the 3553A factors weigh heavily in Mr. Hardy's favor. Nothing has changed since the initial offense except for the fact that in his nine years in the Bureau of Prisons, he's accumulated an exemplary prison record, having no discipline at all, which is pretty remarkable for nine years in the BOP, having completed numerous educational classes, completing his GED, and satisfactorily completing a number of work assignments. As this Court recognized in Mann, that kind of exemplary prison record is a factor under 3553 that is considered in these 3582 motions and that weighs heavily in the defendant's favor. So we think that the 3553A factors here are clear. Y'all didn't litigate the hood issue in the District Court, did you? We did not. Everybody just assumed it didn't apply anymore. I think that's correct, and I think that's... By everybody, I mean both sides and the judge. Right. As far as I know, everybody except for Judge Osteen has believed that the hood has been superseded. But the hood is still precedent in the Fourth Circuit. It is. And this would have to be vacated and sent back for re-sentencing, right? I'm not quite sure I follow the question. Well, if we decide in the other case that hood is the law. And that, therefore, the District Judge was wrong in this case that he was eligible for any reduction at all. Then the result for this case, for this Court in this particular case, is to say the errors, the issues we've raised on appeal are incorrect and to affirm the judgment. I think, Judge King, you were asking whether you need to correct the error and vacate and send this back for the original sentence to be re-imposed. Well, I'll tell you what, go on and finish. I'll try to remember my question. You're on a roll. Go ahead. I usually am. So just to be very clear, if the Court agrees with hood, I think the result here is to simply affirm the judgment. In fact, if the Court is going to affirm hood in the Williams case, I'd ask the Court to hold this case in abeyance until that so that I can consult with my client as to whether he'd wish to dismiss his appeal in light of that development. But I would say that if you look at the cross-appeal rule under Green law versus United States, it prohibits a circuit court from altering a judgment to benefit a non-appealing party. Here, the government has chosen not to cross-appeal in this case and not to ask that the original sentence be reinstated. Therefore, this Court lacks the authority under the cross-appeal rule to wipe out the sentence to send it back to impose a higher sentence. But what if the judge didn't have the authority to make a change? Well, he simply made an error on the merits, Judge Draxler. That's not a jurisdictional issue, and it's not one that this Court needs to or should raise sua sponte. And I would point to the Seventh Circuit's decision in United States versus Taylor, which is at 778 F3rd 667. Why do I get the feeling you anticipated my question? I try my best to do that. So if you look at Taylor, it's a Seventh Circuit case. It's from earlier this year, 2015. It analyzes this very question. Is this a jurisdictional issue, or is this simply a merits issue? It concludes that the statutory criteria in 3582 present solely a merits question. They do not go to the courts. So the government can protect its cooperator simply by not cross-appealing. Exactly, Judge King. They can leave it alone. Exactly, Judge King. I think it would serve no one's interest in this case to wipe out the sentence reduction that Mr. Hardy received in this case. And to follow up on Taylor, it says that it's a matter of the merits, not subject matter jurisdiction. I would point out to the Court. But he'd be getting the benefit that Mr. Williams didn't get. He would. Which would undermine the reason for the sentencing guidelines. Well, it would certainly. There is going to be a sentencing disparity if this Court affirms Hood. I will tell you, this circuit will have a series of defendants who do not receive a benefit that are being received in every other circuit in this country. How many of them do you think there are? Thousands. In this circuit? Well, at least hundreds in the circuit. Actually, we had over 1,000 cases to review. I think we filed several hundred motions. That involve mandatory minimum? No. Now, that's total. The subcategory that involves mandatory minimums is somewhat lower, but it's still a significant number. How many with a mandatory minimum? I don't know that number, unfortunately. I didn't anticipate that question. More than one. But it's not zero. That is for sure. We have some other cases that are going to be. The one is already held in abeyance for this case, one that we would potentially file the Notice of Appeal soon, where the order came out last week. So one other thing I would say on the subject matter jurisdiction point very quickly is that the conclusion in Taylor in the Seventh Circuit that this is not a question of subject matter jurisdiction is consistent with Hood itself. If you look at the Hood decision, it treats the criteria under 3582 as a merits issue. It does not, if you run a word search in the Hood decision, it does not use the word jurisdiction a single time. And it affirms the denial of relief in that case on the merits. It does not dismiss the appeal for lack of jurisdiction, does not instruct the district court to dismiss for lack of jurisdiction. So this court's precedent already treats this merely as a question on the merits, not a question of subject matter jurisdiction. I want to circle back to, I mentioned already the reason that Dillon supersedes the analysis in Hood. I also want to explain why Freeman supersedes the analysis in Hood and why Mr. Hardy in this particular case would be eligible for a sentence reduction based on the Freeman decision. You say Freeman superseded it. Now, the biggest in the previous case said that Freeman helped him. Well, I respectfully disagree. So there's something there for everybody. There is a little bit there for all of us, I hope. So this court has said in the Brown decision that Justice Sotomayor's opinion is controlling. The D.C. Circuit in the sealed case said that the plurality was, and maybe the reasoning there is persuasive or not, but this court is bound by Brown, which says that Justice Sotomayor controls. If you look, there's a very strong analogy to what Justice Sotomayor says to what happened here in this case. If you look at Joint Appendix page 75, after granting the substantial assistance departure, Judge Thornburg in this case expressly referred to the otherwise applicable guidelines range of 168 to 210 months in determining his sentence. That, to me, shows that that sentence was based on that. And the analogy is very strong to what Justice Sotomayor says in her Freeman concurrence. She says that in general, just because in a C plea agreement, it's not always based on the guidelines. But it is, at least in those cases, where the C plea expressly refers to the guidelines range. C plea is an agreed plea in the plea agreement? Yes. For the benefit of the students, the C plea is a binding plea agreement where the district court has the choice either to accept or reject the agreement in whole when the agreement includes a recommendation as to the appropriate sentence. So she says that at least in the situation where the C plea refers expressly to the guidelines range that is then lowered, that is enough to satisfy the baseline requirement in the statute. The analogy here is super-duper strong because Judge Thornburg referred expressly to- That's not a legal term. It's not. But it's true nonetheless. He referred expressly- It might become one. Maybe. I hope you're right in the opinion. He referred expressly to the range of 168 to 210 months, which I think shows that applying Justice Sotomayor's reasoning, which this court is bound to apply, that at least in those types of cases, like Mr. Hardy's, the defendant is eligible for relief under 3582. If we agree with your argument, and we send it back to the judge for re-sentencing, what restrictions do we put on his sentence? I think what you say is that the government and Mr. Hardy were correct in the first instance that under Section 1B1.10, the Sentencing Commission has authorized- What restrictions do we put on him? I'm getting there. Sorry. I'll try to talk faster, but that's kind of hard. I don't think folks from Pocahontas County talk that fast. I know. Judge Duncan doesn't believe I'm from West Virginia. So I think you have to start with explaining, clarifying for the court what the scope of his authority is under 1B1.10, to say that when you apply the analysis in 1B1.10, you're authorized to go down as low as 98 months. Then that's Step 1 under Dillon. So we would put a bottom on it. The Sentencing Commission has already put that bottom on it, and he's required to follow that bottom. He doesn't have the authority under 3582 to go below 98 months. So, yes, I think what has to be clear in the first instance is what is the scope of his discretion under 1B1.10. That is, again, that's Dillon itself. It says that Step 1, you have to follow the commission's instructions as to the extent of the reduction authorized. So the judge has to acknowledge, has to be aware, that he could go to 98 months. Then, following Step 2 of Dillon, 1B1.10 says that he may exercise his authority under 3553A to grant a lesser reduction, if he believes that the 3553A factors warrant a lesser reduction. I think the key point, and everybody refers to, well, the district judge has discretion under 3582 to do what he wants to do. It's not entirely true. The district court has discretion, but it's bounded by 3553A. He can't say, for example, I'm going to deny this based on race, based on gender, based on any other characteristics. And, in fact, even more than that, the Sentencing Commission has expressly said that he has to base his decision on what 3553A says. And here we think the 3553A factors, particularly the exemplary prison record, point in favor of the full reduction. Thank you. May it please the Court, Amy Ray for the United States. Your Honor, the district court in this case exercised its discretion properly to grant Mr. Hardy a reduction under Amendment 782 and 18 U.S.C. 3582, but not to grant the entirety of the reduction for which Mr. Hardy was eligible. I guess addressing the sort of antecedent issue, as Mr. Carpenter termed it, and I'm the fifth lawyer now to stand up and sort of approach this, but here's my take on it, the government's take on it. Hood was properly decided. Hood was correctly decided. The differences in Hood, both in 3553E as well as 3582, they both say that those reductions have to be made in accordance with the policy statements of the Sentencing Commission. At the time Hood was decided, the Sentencing Commission's policy statement said you have to apply 5G1.1 in determining whether any reduction, the defendant is eligible for a reduction under 3582C2. So when Hood deferred as it has to, as all courts have to, to the statutory mandatory minimum, it was also recognizing that 5G1.1 refers back to that statutory mandatory minimum. That has now changed. So Hood was properly decided. It is still properly decided. It is simply that the amendment has changed so that while Hood referred to 5G1.1, now... You're talking about Amendment 780. I mean Amendment 780 and now 1B1.10 has changed, I should probably say more accurately. So now 5G1.1 is not in the mix anymore. So when a court applies 3582C2 to determine what the sentence was based on, the court no longer looks at 5G1.1 in the statutory mandatory minimum and instead has to refer to the guideline itself, to the otherwise applicable guideline range. So I don't think that this court needs to determine or declare that Hood has been abrogated by any Supreme Court decision. I think what this court needs to do is recognize that this question wasn't presented in Hood. It wasn't there. The question of whether or not where 1B1.10 says 5G1.1 is to be ignored when one determines what the amended guideline range is was not present in Hood, and therefore Hood does not bar relief for Mr. Hardy, Mr. Williams, nor if Mr. Hood came before under Amendment 782, would it bar relief for him. Okay, so now the question of whether or not Judge Ridinger exercises discretion in this case. I think there are two reasons that I would suggest that Judge Ridinger knew he had the authority to go lower. First of all, all three parties, the probation office, the court's own probation office, as well as the defense attorneys and the government, agreed that Mr. Hardy was eligible for a sentence reduction to 98 months. Judge Ridinger, in his order, did not say, as one would expect... And why is it the government doesn't agree anymore? Why aren't you still sitting with him the way that they were sitting together? Because the difference is that we agreed he was eligible for that. We didn't say the district judge had to grant a reduction to 98 months. So the district judge exercised his discretion reasonably to reduce Mr. Hardy's sentence to the bottom of the otherwise applicable range, just as Judge Thornburg had when Mr. Hardy was originally sentenced. His cooperation was recognized by a reduction to the otherwise applicable range without consideration of the mandatory minimum. So the question, and your honors may be aware that this court originally appointed Amicus in this case, assuming that the government was going to join with Mr. Hardy. But when we looked at this case, we said, well, it's clear from Judge Ridinger's order, at least it was clear enough, that he exercised his discretion. And I would note that the vast majority of 782 orders do not contain any explanation other than the boxes that are checked. Judge Ridinger... Haven't you all changed your position from what it was in the district court to what it is today? Absolutely not, your honor. What we said in the district court, and I think that opposing counsel says in his brief that we recommended a particular sentence. What we said in the district court was he is eligible for a sentence of 98, and we consent to the motion. It was his motion, and we consented to that reduction. But we did not make an affirmative sort of recommendation that based on 3553A, this is what he should or should not get. But we agreed that he was eligible. We still agree that he's eligible for 98 months. This judge could have... And you still consent to 98? Yeah, absolutely. We do. But the judge wasn't required to impose a sentence of 98 months. The judge had the discretion to grant a more limited reduction. And the situation is that for these cooperating defendants, under Amendments 706 and 750, these folks got no reduction. The Sentencing Commission took a look at that and said, well, they probably ought to get a reduction. But the reduction that they get under 782 is pretty dramatic. They get what amounts to a windfall. This defendant received... And that's fine. The government doesn't challenge the Sentencing Commission's authority to do that. And we have consented to all of those... Well, these are your witnesses we're talking about, right? Yeah, sure. These are your snitches. Right. I mean, they're cooperating. They are cooperating. That's the legal term. That's right. But we know what they are. Absolutely. And we want to encourage them. Yes. You've got to get evidence. You have to have witnesses to prosecute the real bad guys. Yes. We all understand that. And that's the reason that all this stuff is written like this. Yes. That's right. But... How many of them are there? There are... Mr. Carpenter said he really didn't know. Yeah, I regret... It's funny, I was on the phone this morning clarifying and determining exactly how many total motions we've had filed. And in our district, it's about 1,000. In your district? In our district, 1,000 motions under... That's in western North Carolina? Western North Carolina. I promise you, 996 was the number I was told this morning. 996? 996 have been filed. But that's not all in the same setting. No, I was about to say that. No, that's 996 total motions to date. And by the way, Mr. Newman back here is continuing to file them regularly for the federal defenders, so we are getting more. And I have responded to every single one of those that I've been asked to respond to. And I would say, you know, I'm guessing about maybe 20%. 20%? This is my guess because I was... Anyway, I didn't get that exact number. But it's a significant percentage. This impacts more than these two folks we got here this morning? Absolutely. I mean, this is a significant issue. And the government is, I think it's... and with both the government and the defense attorney in the former case that Hood does not bar relief for these defendants. And in this case, though, the question is whether or not the district judge understood its authority to go lower than 140 months. And there's just nothing in the record that suggests that the court didn't. And, in fact, the fact that he provided an explanation, used the word likewise. Look, he got a sentence at the bottom of the otherwise applicable range without consideration of the mandatory minimum the first time. And I'm likewise going to grant that reduction, the same similar comparable reduction the second time. What he did not say was that it was a comparable reduction from the guideline sentence or guideline range because the first time it came off 240 and it was 30% reduction. And this time he would have started from the bottom of the range 140 and gone 30% down, there we get to 98. He didn't say he was doing the comparable reduction. There was a box to check for that because he wasn't going 30% below the bottom of the range. He was just simply entering a sentence at the bottom of the range that didn't apply without statutory mandatory minimum. And I guess the only other thing I would note is that in the wake of all of these reductions, now our third round, the courts have been quite clear that these are not supposed to be wholesale resentencings. These are not proceedings where the judge needs to explain every reason he does. It's just a matter of grace that Congress allows judges to provide for defendants who were sentenced based on a sentencing range and the judges, in terms of efficiency, Judge Reidinger did what Judge Reidinger needed to do. He did not say he disagreed with us that it was eligible for 98 months and it would have made sense for him to do so and he explained why he imposed the sentence that he did. If your honors do not have any questions, the government respectfully requests that this court affirm the judgment of the district court. Thank you. Mr. Carpenter. All right. Let's start where Ms. Ray finished off there, which was the box checking issue in this case. As we point out in the reply brief, I think that the checking or not checking of the box on this preprinted form is an unreliable indicator of what the district court is trying to do here. I'd point, as I did in the reply brief, to the fact that there was a separate box right there beside the one that he didn't check that he also didn't check that says that the sentence is within the guidelines range and everyone agrees here that it was within the amended guidelines range. Everyone agrees here that under 1B1.10, the amended guidelines range is 140 to 175 months. He imposed a 140-month sentence yet didn't check that box. At the same time, if you look up in the order, it actually says the amended guidelines range is 240 months, which is incorrect under 1B1.10. It's clear that the amended guidelines range, as the government agrees, is 140 to 175. So I think that's actually further evidence that in this particular case, Judge Reidinger has failed to fully understand the scope of his authority under 1B1.10. And so for that reason, we think it goes back to him. I would point out that if the record is kind of open and ambiguous on this, the court can't tell what he's doing. The outcome is to vacate the order and remand the case. I'd point to Jenkins, which we cited in the reply brief, where in a 35-page... But if we can tell what he's doing by reading what he said he was doing here when he explained it, then we should just affirm it. No. If you agree with the threshold question of, is he intending to exercise his discretion, then I think you get to the alternative argument, which is, doesn't he have to give an explanation that is tailored to the 3553A factors, which is the argument that we fleshed out in more detail in the reply brief. I think that here, he doesn't cite any of the 3553A factors. He doesn't acknowledge the exemplary prison record that's been accumulated. And so that gives the court the impression that he simply overlooked that factor. Now, I understand Degree and Smalls say that in the ordinary 3582 case, there's no need for a big explanation. But Smalls itself assumes that when you have a joint sentencing recommendation, as you do in this case, and whether the government recommends or consents, I don't think makes a whole lot of difference. But in any case, if you have a joint recommendation, the parties are saying the same thing, the judge rejects that, but doesn't give an explanation as to why under 3553A, then I think the outcome is to send it back to allow him to exercise his discretion, where we can be certain that he has fully understood the scope of his authority. I wanted to circle back to one other question that Judge Thacker, you had raised in the preceding argument about the anomalies created by leaving Hood in place. And I think you touched on a very important issue, because with Hood in place, and the Sentencing Commission has responded to this, but with Hood in place, what we have is a situation where the most culpable, the worst of the worst of the cooperating defendants get a break under 782. The worst of the worst, too. Those whose guidelines range are above the statutory minimum, they get a break. But the best of the best, the least culpable of the cooperators, they don't get a break under 782. And that kind of anomaly just doesn't make any sense. It's not what the Commission wanted. It's surely not what Congress wanted when it said in 3582C2 that these reductions have to be consistent with the Sentencing Commission's.  No, no. I'm saying if you look solely at the set of people who both received the 851 notice, which means they were subject to the mandatory minimum, and also cooperated, within that category, the worst of the worst are the ones whose offense characteristics. How are you defining worst of the worst? Those whose offense characteristics in criminal history put them above the mandatory minimum in terms of their guidelines. They were facing life sentence. They were facing life. We're facing 360 to life, but only at 252. Those guys get the break. The folks who, like Mr. Hardy, had an otherwise applicable guidelines range below the mandatory minimum don't get a break under 782. I would also point out that, and this goes to Judge Traxler, to your question in the preceding argument about the fairness when there's a mandatory minimum. It's a key point to recognize that this isn't a mandatory minimum based on drug weight that applies in every single case. These are mandatory minimums that are triggered by the government's discretionary decision to file an 851 notice. So if you asked in the last case about what would happen if he were sentenced today, if Mr. Hardy were being sentenced today, he would not be subject to a 240-month mandatory minimum because the Department of Justice has revised its guidelines to say that in cases like his where he's not a leader or organizer, where he's not involved with the cartel, et cetera, et cetera, you do not file, prosecutors, you do not file the 851 notice in those cases. And so part of what the Sentencing Commission is doing here does in some sense look like a windfall, as Ms. Ray suggested, but that is a windfall that is driven by a recognition by the Sentencing Commission and others that the 851 notices have been filed too frequently and too loosely in the past. When did they change that? I don't know the exact date. I think it was 2013 was Attorney General Holder issued a memorandum dramatically revising the way in which the prosecutors were instructed to exercise their discretion in filing 851. That could change with the next presidential election. Of course, but I think it is informative to your question as to why is the break this big. I think the break is this big because the current thinking among the Sentencing Commission and among the Department of Justice is that these notices have been filed a bit too frequently in the past. And so that is why the numbers look larger than you might otherwise expect.  Thank you very much.
judges: William B. Traxler, Jr., Robert B. King, Stephanie D. Thacker